UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIA CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>ARIZONA BEVERAGES USA LLC, et al.,<br><br>Defendants. | Case No. 22-cv-02752-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 19 |

Before the Court is Defendants Arizona Beverages USA LLC's and Hornell Brewing Co., Inc.'s (collectively, "Arizona") motion to dismiss. ECF No. 19. The Court will grant the motion in part and deny it in part.

I.  **BACKGROUND**

For purposes of the instant motion, the Court accepts the following facts as true. Arizona manufactures, distributes, and sells "Fruit Snacks" in "Arnold Palmer Half & Half" and "Green Tea" varieties. Compl. ¶ 1, 4, 25-26, ECF No. 26. The front of the packaging on both products states, "MADE WITH REAL FRUIT," and the statement is juxtaposed against a backdrop containing images of various fruits. *Id.* ¶ 25. The Arnold Palmer Half & Half backdrop contains images of lemons, strawberries, peaches, and mangoes. *Id.* The Green Tea backdrop contains images of plums, apples, blueberries, and oranges. *Id.* The back of the product packaging states, "MADE with REAL FRUIT" and "FRUIT IS OUR FIRST INGREDIENT." *Id.* ¶ 26. The ingredients list on the label of each product indicates that the first ingredient is pear juice from fruit juice concentrate. *Id.* ¶ 33. Arizona's website listing for the products states that they "give[] you 100% real fruit," *id.* ¶ 44, and several posts on Arizona's social media pages indicate that the products are "Made with real fruit" and "give you 100% real fruit," *id.* 45.

The packaging appears thusly:






2

Plaintiff Marcia Campbell purchased the fruit snacks, believing that the products contained "significant amounts" of the fruits depicted on their packaging. *Id.* ¶ 15. Campbell subsequently filed suit. She alleges that the fruit snacks "contain no real fruit," *id.* 73, including none of the fruit depicted on the packaging, *id.* ¶ 69, such that the packaging constitutes a misrepresentation and that the products are misbranded under the Federal Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq. Id.* ¶ 75-78. She brings claims for (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code §§ 17500 *et seq.*; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (4) breach of express warranty; (5) breach of the implied warranty of merchantability; and (6) unjust enrichment. She seeks damages and an injunction on behalf of herself, a nationwide class comprising "[a]ll persons who purchased Defendants' Products within the United States and within the applicable statute of limitations period," and an analogous California subclass.[1]

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

---

[1] The complaint defines the California subclass as, "All persons who purchased Defendants' Products *within the State of Oregon*." Compl. ¶ 90 (emphasis added). The Court assumes this is a typographical error. Campbell should rectify this error should she choose to file an amended complaint.

3

1  content that allows the court to draw the reasonable inference that the defendant is liable for the
2  misconduct alleged." *Iqbal*, 556 U.S. at 678.  While this standard is not "akin to a 'probability
3  requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."
4  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely
5  consistent with' a defendant's liability, it 'stops short of the line between possibility and
6  plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  In determining
7  whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations
8  in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.
9  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV. DISCUSSION

The parties dispute whether (1) 21 C.F.R. § 101.22 preempts Campbell's claims, (2) a reasonable consumer would find the packaging of the fruit snacks deceptive, (3) the complaint fails to state a claim for breach of warranty, (4) Campbell may seek equitable relief, and (5) the complaint fails to plead Campbell's claims with the particularity required by Federal Rule of Civil Procedure 9(b).  The Court addresses each argument in turn.

### A. Preemption

"Preemption of state law, by operation of the Supremacy Clause, can occur in one of several ways: express, field, or conflict preemption." *Cohen v. Apple Inc.*, 46 F.4th 1012, 1027 (9th Cir. 2022) (quoting *Beaver v. Tasadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016)).  "Absent express congressional preemption," field preemption occurs "'when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively,'" and conflict preemption occurs "where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Id.* (alteration in original) (first quoting *Kurns v. R.R. Fiction Prods. Corp.*, 565 U.S. 625, 630 (2012); and then quoting *Beaver*, 816 F.3d at 1179).  "[P]reemption analysis is driven by the presumption that 'the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Id.* (quoting *Beaver*, 816 F.3d at 1179).  Accordingly, the party arguing preemption "bear[s] the considerable burden of overcoming 'the starting presumption that

1   Congress does not intend to supplant state law.'" *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227

2   (9th Cir. 2013) (en banc) (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S.

3   806, 814 (1997)).

4         For preemption purposes, "state law claims related to advertising that are 'premised

5   ultimately upon the inadequacy of the product label' are treated the same as a state law claim

6   about the label itself." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1290 (9th Cir. 2021)

7   (quoting *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 561 (9th Cir. 1995)). State law claims are

8   preempted to the extent that they pertain to representations that are "materially identical" to those

9   required or permitted by the relevant agency, statute, or regulation. *Id.* Conversely, such claims

10  are not preempted to the extent that they pertain to representations that are "materially different

11  from" the required or permitted representations. *Id.*; *see Reid v. Johnson & Johnson*, 780 F.3d

12  952, 959 (9th Cir. 2015) ("The preemption analysis turns on whether the challenged statements are

13  authorized by the FDA's regulations or other pronouncements of similar legal effect.");

14  *Werdebaugh v. Blue Diamond Growers*, No. 12–CV–02724–LHK, 2013 WL 5487236, at *6 (N.D.

15  Cal. Oct. 2, 2013) ("[T]he FDCA does not preempt California . . . claims based on requirements

16  identical to FDA regulations.").

17        The Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353

18  (codified at 21 U.S.C. §§ 343 *et seq.*) amended the FDCA to provide, in relevant part, a series of

19  express preemption provisions applicable to the food labeling context. 21 U.S.C. § 343-1(a)

20  provides, "[N]o State . . . may directly or indirectly establish under any authority to continue in

21  effect as to any food in interstate commerce . . . any requirement for the labeling of food of the

22  type required by" 21 U.S.C. §§ 343(g), (i), (k). These subsections respectively pertain to

23  representations as to definition and standard of identity; labels without such representations; and

24  labels concerning artificial flavoring, artificial coloring, or chemical preservatives. *See* 21 U.S.C.

25  §§ 343(g), (i), (k).

26        Promulgated pursuant to this statutory authority, 21 C.F.R. § 101.22 sets forth

27  requirements for situations in which "the label, labeling, or advertising of a food makes any direct

28  or indirect representations with respect to the primary recognizable flavor(s), by word, vignette,

1  *e.g., depiction of a fruit*, or other means, or if for any reason the manufacturer or distributor of a
2  food wishes to designate the type of flavor in the food other than through a statement of
3  ingredients." *Id.* § 101.22(i) (emphasis added). The regulation terms such a flavor the
4  "characterizing flavor." *Id.* The regulation also articulates a general rule: "If the food contains no
5  artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the
6  food on the principal display panel or panels of the label shall be accompanied by the common or
7  usual name of the characterizing flavor, e.g., 'vanilla', in letters not less than one-half the height of
8  the letters used in the name of the food . . . ." *Id.* § 101.22(i)(1). The regulation provides a
9  number of exceptions to this rule, including the following:

> If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake," and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

16  *Id.* § 101.22(i)(1)(*i*). Accordingly, Campbell's claims are expressly preempted to the extent that
17  they seek to impose requirements not identical to those set forth in 21 C.F.R § 101.22(i).
18  Campbell's complaint advances two sets of allegations with respect to the product
19  packaging. Campbell alleges both that the products contain "no real fruit" whatsoever, *e.g.,*
20  Compl. ¶ 73, and that although the packaging of the products "depict[s] certain fruits, those fruits
21  are not the predominant ingredient nor are they even present in the product[s]," *id.* ¶ 69. However,
22  pear juice from fruit juice concentrate is the primary ingredient. *Id.* ¶ 33; *see* 21 C.F.R. § 101.4.
23  As a result, the representation of the products as "Fruit Snacks" partially complies with the general
24  rule of 21 C.F.R. § 101.22(i)(1) because "fruit" is the characterizing flavor and "the name of the
25  food on the principal display panel," i.e. "Snack," is "accompanied by the common or usual name
26  of the characterizing flavor," i.e. "Fruit," "in letters not less than one-half the height of the letters
27  used in the name of the food." The representation of the product as "Fruit Snacks" thus comports
28  with the requirements in this regard. Consequently, Campbell's claims predicated on allegations

6

1    that the products contain "no real fruit" are preempted because they concern language that is, with

2    respect to this allegation, "materially identical" to the language required by the regulation.

3    *ConAgra Brands*, 16 F.4th at 1290.

4      Simultaneously, however, the "depictions of . . . fruit[s]," *id.* § 101.22(i)(1), on the

5    packaging trigger the exception of 21 C.F.R. § 101.22(i)(1)(*i*) because "the food contains no such

6    ingredient" and the exception therefore requires that "the name of the characterizing flavor . . . be

7    immediately followed by the word 'flavored' in letters not less than one-half the height of the

8    letters in the name of the characterizing flavor." The products thus allegedly violate the FDA

9    regulation in this regard. Campbell's claims predicated on allegations that the depicted fruits are

10   not present in the product are not preempted because they concern language that is, in this respect,

11   "materially different from" the language required by the regulation. *ConAgra Brands*, 16 F.4th at

12   1290; *see Marino v. YummyEarth, Inc.*, 22-cv-02739-VC, 2022 WL 16912389, at *1 (N.D. Cal.

13   Nov. 3, 2022) (holding plaintiff's claims concerning the defendant's "Fruit Snacks" product were

14   not preempted where the plaintiff alleged that the product fell within the exception of Section

15   101.22(i)(l)(*i*) but did not contain the mandatory term "flavored" in its name); *Werdebaugh*, 2013

16   WL 5487236, at *10 ("[T]he Court finds that Plaintiff's 'All Natural' claims rely on requirements

17   that are identical to [the requirements set forth in Section 101.22(i)(1)(*i*)]. Thus, these claims are

18   not expressly preempted by federal law."); *Swearingen v. Yucatan Foods, LP*, 24 F. Supp. 3d 889,

19   897 (N.D. Cal. 2014) ("Plaintiffs assert a theory of liability that rests solely on defendant's alleged

20   failure to comply with the nutritional labeling requirements of the FDCA as incorporated into

21   California state law by the state's Sherman Law. Because the claim rises or falls on defendant's

22   compliance with the FDCA, the express preemption clause of section 343–1 does not apply."),

23   *reconsideration granted on other grounds*, 59 F. Supp. 3d 961 (N.D. Cal. 2014); *Hilsley v. Gen.*

24   *Mills, Inc.*, 376 F. Supp. 3d 1043, 1048 (S.D. Cal. 2019) (holding that Section 343-1 did not

25   preempt the plaintiff's claims to the extent that the claims were "based on the failure to label the

26   fruit snacks as" required by Section 101.22(i)); *cf. Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097,

27   1103 (N.D. Cal. 2012) ("If Lam means to assert that the Fruit Snacks violate 21 C.F.R. § 101.22(i)

28   or 21 U.S.C. § 343(k) because their flavors are artificial, then she must allege as much in her

complaint. She has not. Accordingly, her claims concerning the flavoring labels are preempted by the FDCA.")

Arizona's argument to the contrary is without merit. Arizona argues that its products comply with the regulation and cite a number of cases in which courts have purportedly "reject[ed] similar attempts to base claims on the use of fruit terms or images to describe a product's characterizing flavors." ECF No. 19 at 13. But this assertion mischaracterizes the cases on which it relies. In *Samet v. Proctor & Gamble Co.*, No. 12-CV-01891 PSG, 2013 WL 3124647, at *6 (N.D. Cal. June 18, 2013), the district court held that Plaintiffs claims were preempted to the extent that the fruit snacks at issue "complie[d] with Section 101.22(i)" because that aspect of the plaintiffs' claim "[went] beyond what is required by the FDCA." But, by the same token, the district court held that another claim was not preempted because the plaintiffs "alleged that [the defendants] violated the FDA regulation." *Id.* Similarly, in *Chuang v. Dr. Pepper Snapple Group, Inc.*, No. CV 17–01875–MWF (MRWx), 2017 WL 4286577, at *5 (C.D. Cal. Sept. 20, 2017), the district court held that Section 343-1(a) preempted the plaintiffs' claims concerning the absence of strawberry and blueberry in the defendant's fruit snacks because the packaging of the fruit snacks read "Fruit Flavored Snacks" and thus complied with Section 101.22(i). And in the same vein, the district court in *Dvora v. General Mills, Inc.*, CV 11–1074–GW(PLAx), 2011 WL 1897349, at *6 (C.D. Cal. May 16, 2011), held that Section 343-1(a) preempted the plaintiff's claims because "it [wa]s impossible to see how [the plaintiff's] lawsuit does not seek to impose limitations on [the defendant's] manner of packaging its products that are different from what federal regulations currently require/permit." [2] These holdings are entirely consistent with the Court's analysis. Arizona has failed to satisfy their "considerable burden" to establish that Campbell's claims are preempted.

---

[2] While Arizona also relies on *McKinnis v. General Mills, Inc.*, CV 07-2521 GAF (FMOx), 2007 WL 4762172, at *2-3 (C.D. Cal. Sept. 18, 2007), the district court in that case wrote that it "need not address the merits of" the defendant's preemption argument because "preemption aside, Plaintiffs' six causes of action all fail because none raise[s] an actionable claim."

### B.     Reasonable Consumer

The sufficiency of Campbell's statutory claims is governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Under this test, Campbell must plead facts sufficient to "show that 'members of the public are likely to be deceived.'" *Id.* (quoting *Freeman*, 68 F.3d at 289). The test "requires more than a mere possibility that [a product's] label 'might conceivably be misunderstood by some few customers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508). In conducting this inquiry, the Court considers that reasonable consumers should not "be expected to look beyond misleading representations on the front of the [packaging] to discover the truth from the ingredient list in small print on the side of the [packaging]." *Williams*, 552 F.3d at 939. "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for a decision on" a motion to dismiss. *Id.*

The Ninth Circuit's decision in *Williams v. Gerber Products Co.* concerns facts substantially similar to those of the case at hand and compels the conclusion that a reasonable consumer is likely to be deceived by the packaging on Arizona's fruit snacks. In that case, the packaging for Gerber's Fruit Juice Snacks contained "the words 'Fruit Juice' juxtaposed alongside images of fruits such as oranges, strawberries, and cherries.'" *Id.* at 937. The plaintiffs alleged that the product was deceptive because it "contained no fruit juice from any of the products pictured on the packaging and because the only juice contained in the product was white grape juice from concentrate." *Id.* The side of the box stated, "Made with real fruit juice and other all natural ingredients." *Id.* at 941. In holding that the packaging was deceptive, the Ninth Circuit described "a number of features of the packaging," including that "[t]he product is called 'fruit juice snacks' and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product." *Id.* at 940. The same can be

9

said of the labels at issue here:  the images of the various fruits on the Arnold Palmer Half & Half Fruit Snacks and the Green Tea Fruit Snacks could falsely suggest that those fruits are contained in the products, when in fact the fruit snacks contain only pear juice from concentrate.  Further, the "made with real fruit" and "fruit is our first ingredient" representations could lead a reasonable consumer to believe that the statements apply to the fruits depicted on the packaging itself.  The complaint thus satisfies the reasonable consumer inquiry and states claims for violations of the UCL, FAL, and CLRA.  This is not "the rare situation in which granting a motion to dismiss is appropriate."  *Williams*, 939 F.3d at 939.

The caselaw is in accord.  In *Marino v. YummyEarth, Inc.*, 22-cv-02739-VC, 2022 WL 16912389, at *1 (N.D. Cal. Nov. 3, 2022), the district court applied *Williams* and found that the packaging for the defendant's Organic Fruit Snacks could deceive a reasonable consumer because the packaging depicted fruits that were not present in the product.  The district court wrote that "[w]hile the snacks do contain fruit juice, the labels are still potentially misleading because that juice comes from different fruits than those depicted."  *Id.*  Likewise, in *Lam v. General Mills*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012), the district court denied the defendant's motion to dismiss claims concerning the defendant's Fruit Roll-Ups and Fruit by the Foot packaging.  The district court found that, where the words "made with real fruit" appeared on the side panel of the packaging and the word "strawberry" appeared in large letters on the sides of the packaging, a reasonable consumer could be led "to believe that the product is made with real strawberries, not pears from concentrate."  *Id.* at 1105.  Similarly, in *Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 WL 4183936, at *3 (S.D. Cal. Sept. 3, 2019), the district court found that a reasonable consumer would believe Starbucks Sour Gummies to "only contain natural flavors when the product's packaging does not disclose the use of artificial flavors near the description of its characterizing flavors."  And in *Hilsley v. General Mills, Inc.*, 376 F. Supp. 3d 1043, 1050 (S.D. Cal. 2019), the district court found the reasonable consumer test satisfied where the plaintiff "ha[d] sufficiently alleged that the product label" on the defendant's fruit snacks "violated 21 C.F.R. § 101.22."

Arizona's arguments to the contrary once again rely on mischaracterizations.  As a

10

1    preliminary matter, Arizona suggests that because *Williams* "was decided before the more
2    exacting plausibility requirements imposed by the United States Supreme Court in *Ashcroft v.*
3    *Iqbal*," *Williams* must "be viewed in that light." ECF No. 30 at 3. What Arizona intends by this
4    assertion is unclear. To the extent that Arizona means to suggest that the Ninth Circuit in
5    *Williams* failed to hold the plaintiffs' complaint to the *Iqbal* pleading standard, the text of
6    *Williams* dispels any such suggestion. The pleading standard further explicated by the Supreme
7    Court in *Iqbal* was first articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550
8    U.S. 544 (2007), which the Ninth Circuit in *Williams* quoted in discussing the legal standard for a
9    motion to dismiss. *See Williams*, 552 F.3d at 938. To the extent that Arizona means to suggest
10   that *Iqbal* somehow altered the reasonable consumer test under California law, the Court directs
11   Arizona's attention to the hundreds of post-*Iqbal* court decisions by the Ninth Circuit and the
12   California federal district courts that quote *Williams* without qualification for its articulation of the
13   reasonable consumer test. *E.g., Ebner*, 838 F.3d at 965. Indeed the principal case Arizona cites
14   for the proposition that "[c]ourts have observed that *Williams* needs to be viewed in [the] light" of
15   *Iqbal*, ECF No. 30 at 3, applies the reasonable consumer test as articulated in a case decided in
16   1995 – more than a decade before *Iqbal*. *See Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035
17   (N.D. Cal. 2015) (citing *Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995)). In short, to the
18   extent the Court can discern the argument, there is no basis for it.

19       Next, Arizona attempts to reduce Campbell's complaint to its allegation that Arizona's
20   products communicate that they contain significant amounts of fruit. ECF No. 19 at 16. But the
21   principal allegations in the complaint are both that the products contain no real fruit – which
22   claims are preempted – and that the products contain none of the fruits depicted on their
23   packaging. When juxtaposed against a backdrop of lemons, strawberries, peaches, and mangoes,
24   the statements "made with real fruit" and "fruit is our first ingredient" would communicate to a
25   reasonable consumer that some nonzero amount of the depicted fruits is actually present in Arnold
26   Palmer Half & Half Fruit Snacks. The same is true of the plums, apples, blueberries, and oranges
27   depicted on the Green Tea Fruit Snacks. But it is undisputed that the products contain none of

1   these fruits.[3] For that reason, Arizona's reliance on cases like *Workman* is misplaced. *See*

2   *Workman*, 141 F. Supp. 3d at at 1035 ("Plaintiff concedes that the labels contain no affirmative

3   misrepresentations and that all of the items pictured are actually present in the product.").

4       Finally, Arizona insists that "this matter does not concern multiple alleged affirmative

5   misrepresentations, as the entire labels here show depictions of fruit, the disclosure of the

6   corresponding characterizing fruit flavors in a manner complying with FDA regulations and lists

7   pear juice from fruit juice concentrate as the first ingredient in the products." ECF No. 30 at 5; *see*

8   *also* ECF No. 19 at 17-18. This argument obfuscates the discrepancy between the fruits depicted

9   on the packaging and the fruit listed as an ingredient, and it ignores that the depiction of fruits on

10  the packaging subjects the products to regulatory requirements with which Arizona's fruit snacks

11  allegedly do not comply.[4]

### C. Breach of Warranty

13  Arizona argues that Campbell has failed to state a claim for breach of express or breach of

14  the implied warranty of merchantability. "To state a claim for breach of express warranty, a

15  plaintiff must allege that (1) 'the seller's statements constitute an affirmation of fact or promise or

16  a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the

17  warranty was breached.'" *Tabak v. Apple*, No. 19-cv-02455-JST, 2020 WL 9066153, at *9

18  (Jan. 30, 2020) (quoting *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)).

19  Campbell has failed to state a claim for breach of express warranty because she has failed to allege

20  a breach. Unlike Campbell's statutory claims, the sole basis for this claim is that "[t]he Products

21  do not conform to the express warranty because [they] do not contain any real fruit." Compl. ¶ 40.

22  However, as discussed above, Campbell alleges that the products are made with real fruit – pear

---

[3] The Arnold Palmer Fruit Snacks do contain lemon juice, but the ingredients list indicates that the lemon juice is "for color," not flavor. Compl. ¶ 33.

[4] In reciting the relevant language of 21 C.F.R. § 101.22(i)(1), Arizona omits the exception of Subsection 101.22(i)(l)(*i*) discussed above with a bracket that reads "[inapplicable exceptions at (i)-(ii) omitted]." ECF No. 19 at 13. As discussed above, the exception clearly applies to the products. It is thus possible that Arizona misunderstands the regulation and that its arguments stem from that misunderstanding.

juice from juice concentrate.[5]  "Thus, to the extent that [Arizona] warranted [its] fruit snacks were made with real fruit . . . , there is no breach."  *Chuang*, 2022 WL 4286577, at *7.

Campbell's breach of the implied warranty of merchantability claim fails for the same reason.  "The implied warranty of merchantability actually requires goods to be 'adequately contained, packaged, and labeled as the agreement may require; and . . . [to] conform to the promises or affirmations of fact made on the container of label."  *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014) (alteration in original) (quoting Cal. Com. Code § 2314(2)(a)).  Campbell again alleges that the "Products do not meet the quality of their description because they do not contain real fruit."  Compl. ¶ 179.  The products conform to this promise per Campbell's other allegations.

As to both claims, the result would be different if Campbell had, for example, alleged that the products expressly and impliedly warranted that they contained a nonzero amount of the fruits depicted on the packaging.  *See Williams*, 552 F.3d at 940 & n.5.  Accordingly, these claims will be dismissed with leave to amend.

### D.     Equitable Relief

Arizona argues that Campbell has failed to allege an inadequate remedy at law and cannot seek equitable relief or make claims for unjust enrichment.  Under "traditional principles governing equitable remedies in federal courts," Campbell "must establish that she lacks an adequate remedy at law" before securing equitable relief under the UCL and CLRA.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  "[M]ost district courts applying *Sonner* have . . . 'understood it to require that a plaintiff must, at a minimum, *plead* that she lacks

---

[5] To the extent Campbell means to allege that pear fruit juice does not constitute real fruit, courts have routinely rejected this and similar arguments.  *See Manchouk v. Mondeléz Int'l Inc.*, No. C 13–02148 WHA, 2013 WL 54009285, at *3 (N.D. Cal. Sept. 26, 2013) ("The complaint has failed to allege why real strawberries and raspberries in their puréed form are no longer 'real fruit.'  It is ridiculous to say that consumers would expect snack food 'made with real fruit' to contain only 'actual strawberries or raspberries,' rather than these fruits in a form amenable to being squeezed inside a Newton."); *see also Red v. Kraft*, CV 10–1028–GW(AGRx), 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Plaintiffs' theory of the case is that the packaging suggests the product is healthy and contains a significant amount of vegetables because the packaging boasts that the crackers are made with real vegetables and depicts vegetables.  The fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables." (internal quotation marks and emphases omitted)).

adequate remedies at law if she seeks equitable relief.'" *Johnson v. Trumpet Behavioral Health, LLC*, No. 21-cv-3221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (emphasis in original) (quoting *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021)); *see Hrapoff v. Hisamitsu Am., Inc.*, No. 21-cv-1943-JST, 2022 WL 2168076, at *6 (N.D. Cal. June 16, 2022). Campbell does not allege that she lacks an adequate remedy at law. Therefore, the Court will dismiss Campbell's claims for equitable relief with leave to amend.[6]

### E. Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." The pleading of a claim "as a whole must satisfy the particularity requirement of Rule 9(b)" where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). All of Campbell's claims sound in fraud because they are premised on the allegation that Arizona engaged in a uniform course of fraudulent conduct, i.e., that Arizona has long advertised the fruit snacks as containing the fruits depicted on the packaging despite knowing that the products contain none of that fruit. *See, e.g.*, Compl. ¶¶ 17, 70, 123-25, 129. Accordingly, the complaint "must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

The complaint largely satisfies these requirements. As to the product packaging itself, Campbell alleges that she "saw Defendants' misrepresentations . . . at the time of purchase," and

---

[6] The Court additionally notes that, considering the allegations in the complaint, Campbell has not established that she has standing to seek injunctive relief. In the Ninth Circuit, "[a] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," where she plausibly alleges that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or that "she might purchase the product in the future, despite the fact that it was once marred by false advertising . . . as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018). Any amended complaint must include allegations of this sort sufficient to confer standing.

that she purchased the products most recently in November 2021 from Eureka Natural Foods and Winco in Eureka, California. Compl. ¶ 15. The complaint is deficient, however, as to the representations on Arizona's website and in Arizona's social media posts. The complaint must allege "the *particular* circumstances surrounding such representations." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (emphasis added). As to the "when," the complaint fails to identify "when [Campbell] was exposed to" the website and social media pages. *Id*. As to the "where," the complaint fails to "identify . . . where [Campbell] saw the" social media posts. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 914 (N.D. Cal. 2018); *cf. Kearns*, 567 F.3d at 1120 (describing the plaintiff's allegations of the "where" as "(1) Ford's televised marketing campaign; (2) sales materials *found at the dealership* where he bought his vehicle; and (3) sales personnel *working at the dealership* where he bought his vehicle" (emphases added)).

For these reasons, the Court concludes that Campbell has failed to plead her claims with the requisite particularity to the extent that the claims are predicated on Arizona's representations on its website and in its social media posts. Because Campbell has failed to satisfy Rule 9(b) in this regard, Campbell has failed to state a claim based on the website and social media posts. *Vess*, 317 F.3d at 1107. The Court will dismiss these claims with leave to amend.

## CONCLUSION

For the above reasons, Arizona's motion to dismiss is granted in part and denied in part. Dismissal is with leave to amend because it is clear that the complaint could be cured by the allegation of additional facts. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002). Campbell may file an amended complaint to rectify the deficiencies identified herein within 21 days of the date of this order. Failure to file a timely amended complaint will result in dismissal of these claims with prejudice.

**IT IS SO ORDERED.**

Dated: March 31, 2023

JON S. TIGAR
United States District Judge