**GOOD GUSTAFSON AUMAIS LLP**
Christopher T. Aumais (Cal. Bar No. 249901)
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
cta@ggallp.com
jrg@ggallp.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons, Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Pro hac vice* forthcoming

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Marcia Campbell, individually, and on behalf of those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Arizona Beverages USA LLC and Hornell Brewing Co., Inc., <br><br> Defendants. | CASE NO.  4:22-cv-02752-JST <br><br> The Honorable Jon S. Tigar <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **Demand for Jury Trial** |

Plaintiff Marcia Campbell brings this action on behalf of herself and all others similarly situated against Defendants Arizona Beverages USA LLC and Hornell Brewing Co., Inc. (collectively "Arizona" or "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This case arises from Defendants' deceptive and misleading practices with respect to its marketing and sale of their fruit snack products (the "Products").[1]

2.     Defendants manufacture, sell, and distribute the Products using a marketing and advertising campaign focused on claims that appeal to health-conscious consumers – specifically the importance of real fruit and its presence in the Products.

3.     Defendants engage in a deceptive marketing campaign to convince consumers that the Products contain nonzero amounts of the actual fruits shown in the marketing[2] and on the labeling[3] of the Products, they are nutritious and healthful to consume, and are more healthful than similar products.

---

[1] At the time of this filing, the following Arizona products are included in this definition: Arnold Palmer Half & Half Fruit Snacks and Green Tea Fruit Snacks. This definition is not exhaustive, and shall include all of Defendants' products that are similarly deceptively marketed.
[2] Variants of the words "marketing," and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television, and radio commercials, Products' labels, viral marketing, incentives, and websites.
[3] The term "labeling" encompasses other descriptive terms, including various forms of the words: labels, labeling, packages, and packaging.

GOOD GUSTAFSON AUMAIS LLP

4.     Notably, the Products' name – "Fruit Snacks" – combined with packaging that displays images of fresh fruit and prominently states, "MADE WITH REAL FRUIT" and "FRUIT IS OUR FIRST INGREDIENT" establishes this belief with reasonable consumers:

 

 

5. The deception lies in the fact that the Products are devoid of any of the fruits represented on the packaging. Rather than containing these fruits, the Products are packed with sugar. Defendants' Products contain sugar levels comparable to candy and none of the vibrantly depicted fruits.

6. Thus, although Defendants market the Products as containing the depicted fruits while being healthful and nutritious, they are devoid of the fruits and the health benefits reasonable consumers associate with consuming real fruit.

7. Reasonable consumers purchased the Products believing, among other things, that they were accurately represented. Specifically, reasonable consumers believed that the Products were healthful and contained a nonzero amount of the depicted fruits. Reasonable consumers would not have purchased the Products if they had known about the misrepresentations and omissions, or would have purchased them on different terms.

8. Defendants violated the trust of Plaintiff and Class Members because the Products are not the fruit-packed snack that Defendants' labeling represents.

9. Relying on Defendants' representations, consumers that seek healthier alternatives than mere candy only later realize that their purchase of Defendants' Products was a fruitless endeavor.

10. Plaintiff brings this action individually and on behalf of those similarly situated and seek to represent a National Class and a California Class. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits that Defendants have enjoyed from their deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendants' deceptive conduct in the labeling of the Products.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

11.    This Court has personal jurisdiction over Defendants. Defendants purposefully avail themselves of the California consumer market and distribute the Products to many locations within this District and hundreds of retail locations throughout the State of California, where the Products are purchased by thousands of consumers every day.

12.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

13.    Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's purchases of Defendants' Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendants conduct business in this District.

**DIVISIONAL ASSIGNMENT**

14.    Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Humboldt County, and this action should be assigned to the Eureka Division.

**PARTIES**

15.    Plaintiff Marcia Campbell is a citizen of California.

GOOD GUSTAFSON AUMAIS LLP

a.  Prior to her purchase, Ms. Campbell saw and relied on Defendants' marketing and labeling representing that the Products contained nonzero amounts of the named and depicted fruits.

b.  Ms. Campbell wished to purchase the fruit snacks for personal consumption. When Ms. Campbell saw Defendants' misrepresentations prior to and at the time of purchase, she relied on Defendants' prominent representations and claims about the Products. Specifically, that it contained nonzero amounts of the actual fruit that Defendants emphasized on the labeling of the Product.

c.  Ms. Campbell relied on the Defendants' representations, including but not limited to, that the Products are "MADE WITH REAL FRUIT" and "FRUIT IS OUR FIRST INGREDIENT" as well as the fruit imagery that surrounds the entire packaging.

d.  Ms. Campbell understood these representations to mean that nonzero amounts of real fruit from the depicted and referenced fruits were present in the Products. Had Ms. Campbell known the truth – that the Products did not contain any real fruit from the depicted and referenced fruits – Ms. Campbell would not have purchased the Products at a premium price. If Defendants started including real fruit from the depicted and referenced fruits, or the Products were no longer deceptively labeled, Ms. Campbell would purchase the Products again in the future. Ms. Campbell brings the claims below seeking damages, actual and statutory, as well as injunctive relief.

e.

GOOD GUSTAFSON AUMAIS LLP

f.   Ms. Campbell has purchased the Products on multiple occasions. Ms. Campbell's most recent purchase of the Products occurred in November 2021, when she purchased the Arizona Green Tea Fruit Snacks and Arnold Palmer Half & Half Fruit Snacks at a price of approximately $2.50 per bag from Eureka Natural Foods and Winco located in Eureka, CA.

g.   Plaintiff continues to desire to purchase fruit snacks and continue to see the Products at stores when she shops. She would purchase the Products in the future if they contained the depicted fruits as represented, but unless Defendants are enjoined in the manner Plaintiff requests, she may not be able to reasonably determine whether the Products have been reformulated to conform to the misleading claims, or whether Defendants have continued to misrepresent the Products.

h.   Plaintiff would purchase the Products if she could trust that the fruit claims were true and not false or misleading, but absent an injunction, Plaintiff will be unable to trust the representations on the Products when she encounters the Products in the marketplace.

i.   Plaintiff's substantive right to a marketplace free of fraud, where she is entitled to rely on representations such as those made by Defendants with confidence continues to be violated every time Plaintiff is exposed to the misleading labeling claims.

j.   Plaintiff's legal remedies are inadequate to prevent these future injuries.

16.   Defendant Arizona Beverages USA LLC is a New York company with its principal place of business in Woodbury, NY.

**GOOD GUSTAFSON AUMAIS LLP**

17.    Defendant Hornell Brewing, Co., Inc. is a New York corporation with its principal place of business in Woodbury, NY.

    a.    Defendant Hornell Brewing owns Defendant Arizona Beverages USA.

    b.    The marketing and labeling for the Products that Plaintiff and Class Members relied upon in making their decisions to purchase the Products was conceived, designed, prepared and/or approved by the Defendants and was disseminated by Defendants and their agents through labeling, marketing, and advertising containing the misrepresentations from their New York headquarters.

    c.    In committing the wrongful acts alleged herein, Defendants, in connection with their subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendants participated in the making of such representations in that they disseminated those misrepresentations or caused them to be disseminated.

18.    Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who have knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOD GUSTAFSON AUMAIS LLP

## SUBSTANTIVE ALLEGATIONS

**A. Defendants deceive consumers by misrepresenting that the Products contain nonzero amounts of the depicted and referenced fruits.**

19.     Consumers increasingly and consciously seek out healthy foods and snacks— placing value on healthy fruit snacks that contain less added sugar. Consumers seek these types of snacks for various reasons, including perceived benefits of avoiding disease, and attaining health and wellness for themselves and their children and families.[4]

20.     In addition, scientific data shows that it is difficult to meet nutrient needs while staying within calorie requirements if you consume more than 10 percent of your daily calories from added sugar. Consumers seek healthier options by seeking to purchase snack products with less sugar. And scientific evidence indicates that excess sugar contributes to numerous chronic health problems such as heart disease and type 2 diabetes.[5]

21.     As a result, consumers are willing to pay, and have paid, a premium for products that contain real fruit from depicted and referenced fruits over products that do not contain any fruit from referenced and depicted fruits.[6]

---

[4] *See, e.g., Fruit Snacks Sales Rise by 162% Amid COVID-19 Pandemic* (April 29, 2020) https://www.prnewswire.com/news-releases/fruit-snacks-sales-rise-by-162-amid-covid-19-pandemic-301049556.html.

[5] American Heart Ass'n, *Understanding Childhood Obesity*, available at http://www.heart.org/idc/groups/heart-public/@wcm/@fc/documents/downloadable/ucm_428180.pdf.

[6] Mondelez International, *Fruitful Business: Fruit and Veggie Snack Trend Grows Stronger*, https://www.letschatsnacks.com/fruitfulbusiness ("Nielsen reveals that the snackable fruit and vegetable category is ripe with revenue, generating sales of $16.3 billion in the year ended May 27, 2017").

GOOD GUSTAFSON AUMAIS LLP

22.     Companies such as the Defendants capitalize on the consumer's demand for real fruit and generate increased unit sales, revenue, and profit by making real fruit representations.

23.     Further, consumers rely on label representations and information in making purchasing decisions.

24.     Knowing this, Defendants prominently feature real fruit statements and images throughout its packaging.

25.     Notably, the Product's principal display panel displays images of fresh fruit while the packaging prominently states, "MADE WITH REAL FRUIT."



26.     The back of the Products additionally state, "MADE with REAL FRUIT" and "FRUIT IS OUR FIRST INGREDIENT."




27. Additionally, the Products' names are "Fruit Snacks."

28. This leads consumers to believe that the Products contain nonzero amounts of the depicted and referenced fruits.

29. Further, the representation "FRUIT IS OUR FIRST INGREDIENT" on the packaging leads reasonable consumers to believe that there are nonzero amounts of the depicted and referenced fruits in the Products.

30. The FDA mandates that ingredients must be presented in a descending order of predominance.

31. By prominently claiming that fruit is the first ingredient – when it is not- Defendants convey to consumers that real fruit from the depicted and referenced fruits is the primary ingredient.

GOOD GUSTAFSON AUMAIS LLP

32.    Reasonable consumers – accustomed to companies complying with FDA regulations and declaring ingredients in order of predominance – accept this representation to mean that there are nonzero amounts of real fruit from the depicted and referenced fruits in the Product.

33.    The Products fail to contain any of the depicted and referenced fruits:

**INGREDIENTS** ▲

PEAR JUICE FROM FRUIT JUICE CONCENTRATE, GLUCOSE SYRUP, SUGAR, MODIFIED FOOD, STARCH (CORN), GELATIN, DEXTROSE; CITRIC ACID, GREEN TEA EXTRACT; BLACK TEA EXTRACT, NATURAL FLAVOR, FRUIT & VEGETABLE JUICE FOR COLOR (BLACK CURRANT, BLACK CARROT, CARROT, LEMON); COLOR (PAPRIKA OLEORESIN); CARNAUBA WAX.

**INGREDIENTS** ▲

PEAR JUICE FROM FRUIT JUICE CONCENTRATE, GLUCOSE SYRUP, SUGAR, MODIFIED FOOD STARCH (CORN), GELATIN, DEXTROSE; CITRIC ACID, GREEN TEA EXTRACT; NATURAL FLAVOR, FRUIT & VEGETABLE JUICE FOR COLOR (ELDERBERRY, GRAPE, SPIRULINA, TURMERIC); COLOR (PAPRIKA OLEORESIN); CARNAUBA WAX.

34.    To offset its lack of real fruit,  Defendants overcompensate by plastering real fruit imagery throughout their Products' packaging.

35.    For example, the Products include realistic drawings of fruits which wrap around the entire lower level of the packaging.

36.    Based on the representations that appear on the packaging of the Products, Plaintiff reasonably believed that the Products were made with real fruit from the depicted and referenced fruits.

37.    Rather, Defendants' Products are merely sugar filled snacks masqueraded as health-focused treats containing real fruit and nutrition.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

38.   Taken as a whole, the words and images used on Defendants' packaging leads consumers to believe that the Products contain real fruit from the depicted and referenced fruits.

39.   Not only are consumers misled but also competing products sharing the same shelves as Defendants' Products are placed at a competitive disadvantage.

40.   For example, these competing products are sold in the same stores as Defendants' Products yet - unlike the Products - these items do not make real fruit representations:

a.   Alabanse® Gummi Bear candy makes no fruit references and contains similar (actually lower) sugar levels  than the Products.

 

b.   HARIBO® Goldbears® candy includes images of fruit items yet no written fruit messaging and contains similar (actually lower) sugar levels  than the Products.




c. Great Value® Gummy Bears candy includes images of fruit items yet no written fruit messaging and contains lower sugar levels than the Products:



GOOD GUSTAFSON AUMAIS LLP

41.    In other words, while all of the above snacks are similarly high in sugar and lack any real fruit, none of the competing products – unlike Defendants' Products' - deceptively misrepresent that they contain real fruit.

42.    Defendants' deceptions harm not only consumers but also companies that accurately represent their products by diverting attention and dollars away from competitors that are good faith market participants.

**B. The Products contain high amounts of sugar in lieu of real fruit from the prominently represented fruits.**

43.    Defendants' deceptions are not limited to the packaging. They further the deception through targeted marketing and advertising.

44.    For example, the website listing for the Products emphasizes the fruit content and the health benefits of the Products:

**DESCRIPTION** ▲

From your favorite beverage to your next healthier snack time staple. AriZona Arnold Palmer Fruit Snacks gives you 100% real fruit and only 100 calories per serving in the perfect little package. Enjoy Original, Strawberry, Mango and Peach in this bite-size, fat free, gluten free, preservative free and 100% guilt free treat!

**DESCRIPTION** ▲

From your favorite beverage to your next healthier snack time staple. AriZona Green Tea Fruit Snacks gives you 100% real fruit and only 100 calories per serving in the perfect little package. Enjoy Original, Apple, Mandarin and Plum Blueberry in this bite-size, fat free, gluten free, preservative free and 100% guilt free treat!

45.    Additionally, its marketing campaigns perpetuate the "made with real fruit" myth when the Products do not contain any real fruit:

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



46.     Instead, Defendants fail to include any real fruit from the depicted fruits.

47.   The Products contain no dietary fiber, a key health-promoting component of real fruit nor any of the other health benefits of real fruit.

48.   Defendants target their deceptions to consumers demanding health focused products.

49.   Instead of receiving a healthy snack made from real fruit, each serving of the Products contains more sugar per serving than other snacks that do not target health focused consumers.

50.   The Products contain 15 grams of sugar in each serving which is the same amount of sugar as some popular candies:



**There are 3 teaspoons of sugar in three Twix minis.**

**Twix minis.**  Crystal Cox/Business Insider

GOOD GUSTAFSON AUMAIS LLP

**Four Hershey's milk chocolate miniatures also contain 3 teaspoons of sugar.**



**Hershey's milk chocolate miniatures.**  Crystal Cox/Business Insider

**Three Tootsie Roll "Juniors" have 3 teaspoons of sugar.**



**Tootsie Roll "Juniors."**  Crystal Cox/Business Insider

51.   The above listed numbers discuss the *serving size* amounts of sugar.

52.   The Products contain 5 servings per bag, so in total, the Products contain 75 grams of sugar in each bag.

53.   This is more sugar than is present in a 20 ounce bottle of Coca Cola:

GOOD GUSTAFSON AUMAIS LLP



| Serving size | 1 Bottle |
|---|---|
| Amount per serving **Calories** | **240** |
| | % Daily Value* |
| **Total Fat** 0g | 0% |
| **Sodium** 75mg | 3% |
| **Total Carbohydrate** 65g | 24% |
| Total Sugars 65g | |
| Includes 65g Added Sugars | **130%** |

54.    Also, the 75 grams of sugar present in the Products is more than three times the recommended daily intake for women and children and two times the recommended daily intake for men by the American Heart Association.[7]

55.    Moreover, the Products contain almost the same amount of sugar that are present in two 12 oz. cans of Coca Cola:



10 cubes
(1 cube = 4g sugar)

---

[7] 24 grams for women and children; 36 grams for men. American Heart Association, *Added Sugars, available at* https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

GOOD GUSTAFSON AUMAIS LLP

56.     Thus, the Products contain no real fruit – and none of the health benefits associated with the consumption of real fruit – while containing dangerously high levels of sugar that are higher than many items that consumers consider unhealthy.

57.     Through targeted marketing and advertising, Defendants perpetuate the misrepresentation that their Products contain real fruit.

58.     The practice of deceptively marketing fruit snacks as containing substantial amounts of fruit when they do not is well-recognized, and the Center for Science in the Public Interest has been outspoken in its criticism: [8]

> Food companies aggressively market phony fruit snacks to toddlers, children, and their parents, pushing them as healthy options and substitutes for real fruit. Unfortunately for parents and kids, **phony fruit snacks don't always contain the fruits advertised on the front of the box** and never in the quantities suggested. Instead, companies use **relatively cheap, nutritionally void, and highly processed pear, apple, and white grape juices**, making phony fruit snacks much closer to gummy bears than actual fruit.

59.     The Center for Science in the Public Interest's infographic provides additional analysis of this problem:

---

[8] CSPI website, *Phony Fruit Snacks, available at* http://cspinet.org/nutritionpolicy/fruitfraud.html (emphasis added).

GOOD GUSTAFSON AUMAIS LLP



60.     In this case, the Products' first ingredient is not real fruit from any of the prominently depicted fruits. Rather, it is "pear juice from fruit juice concentrate."

61.     In other words, the first ingredient is merely added sugar that is nutritionally void.

GOOD GUSTAFSON AUMAIS LLP

1    62.    In fact, the second (Glucose Syrup) and third (Sugar) ingredients are

2  also added sugars.

3    63.    Rather than having healthful real fruit as its first ingredients,

4  Defendants first *three* ingredients are added sugars.

5    64.    This is the exact scenario shown in the CSPI infographic.

6    65.    Simply, "[t]hese aren't fruit snacks... these sugar-laden treats are 'Phony

7

8  Fruit Snacks.'"[9]

9    66.    Added sugars represent 100% of the sugars contained in the Products.

10    67.    Diets high in added sugars – from such foods as sugar-sweetened snacks

11

12  like the Products – squeeze healthier foods out of the diet, thereby displacing foods

13  that provide nutrients that reduce the risk of osteoporosis, cancer, heart disease,

14  stroke, and other health problems.[10]

15    68.    Diets rich in added sugars contribute to obesity, the prevalence of which

16

17  has risen dramatically in the last three decades in both youths and adults.[11] Obesity,

18  in turn, increases the risk of diabetes, heart disease, high blood pressure, and other

19  health problems.[12] In people who are insulin resistant, high intakes of added sugars

20

21  [9] CSPI website, *Phony Fruit Snacks, available at* http://cspinet.org/nutritionpolicy/fruitfraud.html.

22  [10] *See* S. Bowman, *Diets of Individuals Based on Energy Intakes from Added Sugars*, 12 FAMILY ECON. NUTRITION REV. 31-8 (1999); G. Mrdjenovi & D.A. Levitsky,

23  *Nutritional and Energetic Consequences of Sweetened Drink Consumption in 6- to 13- year-old Children*, 142 J. PEDIATRICS 604-10 (2003).

24  [11] *See* D.S. Ludwig, K.E. Peterson & S.L. Gortmaker, *Relationship between*

25  *Consumption of Sugar-sweetened Drinks and Childhood Obesity*, 357 LANCET 505-8 (2001); C.S. Berkey, H.R. Rockett, A.E. Field, et al., *Sugar-added Beverages and*

26  *Adolescent Weight Change*, 12 OBESITY RES. 778-88 (2004); C.M Apovian, *Sugar-sweetened Soft Drinks, Obesity, and Type 2 Diabetes*, 292 J. AM. MED. ASS'N 927-34

27  (2004); Ctr. for Disease Control and Prevention, Nat'l Ctr. for Health Statistics, Prevalence of Overweight among Children and Adolescents: United States, 1999-

28  2002, *available at* www.cdc.gov/nchs/products/pubs/pubd/hestats/overwght99.htm. [12] U.S. Surgeon General, U.S. Dep't of Health and Human Serv., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* (2001).

increase levels of blood triglycerides, which are associated with a higher risk of heart disease and diabetes.[13] In addition, frequent consumption of foods rich in added sugars increases the risk of osteoporosis.[14]

69.    Defendants' claims about the fruit content of the Products are deceptive. Although the marketing and labeling of the Products depict certain fruits, those fruits are not the predominant ingredient nor are they even present in the Products. Instead, the Products contain significant amounts of added sugars.

70.    As a result of their unlawful, unfair, and fraudulent advertising and marketing practices, Defendants have made millions at the expense of the public health and trust, and continue to make millions through these unfair, unlawful and fraudulent advertising and marketing practices.

**C. The Products are misbranded.**

71.    Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading in any particular." *See* 21 U.S.C. §§ 343(a).

72.    The amount of fruit in the Products has a material bearing on price and consumer acceptance. Moreover, Defendants' marketing and labeling of the Product— including imagery and references of certain fruits—creates the erroneous impression that the fruit depicted in the Products' marketing and labeling is present in an amount greater than is actually the case.

---

*available at* www.surgeongeneral.gov/topics/obesity/calltoaction/CalltoAction.pdf.
[13] M.J. Stampfer, R.M Krauss, J. Ma, et al., *A Prospective Study of Triglyceride Level, Lowdensity Lipoprotein Particle Diameter, and Risk of Myocardial Infarction*, 276 J. AM. MED. ASS'N 882-8 (1996).
[14] S.J. Whiting, A. Healey & S. Psiuk, *Relationship between Carbonated and Other Low Nutrient Dense Beverages and Bone Mineral Content of Adolescents*, 32 NUTRITION RES. 1107-15 (2001).

73.     Defendants' Products contain no real fruit from the depicted and referenced fruits.

74.     Because the Defendants fail to reveal the basic nature and characterizing properties of the Products (specifically, the true fruit content), Defendants' Products are not only sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as it is currently labeled. *See* 21 U.S.C. § 331.

75.     Moreover, California law forbids the misbranding of food in language largely identical to that found in the FDCA.

76.     The Products are misbranded under California's Sherman Law, Cal. Health & Safety Code §§ 109875-111915. The Sherman Law expressly incorporates the food labeling requirements set forth in the FDCA, *see* Cal. Health & Safety Code § 110100(a), and provides that any food is misbranded if its nutritional labeling does not conform to FDCA requirements. *See id.* § 110665; *see also id.* § 110670.

77.     The Sherman Law further provides that a product is misbranded if its labeling is "false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any misbranded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded, *id.* § 110760; to misbrand any food, *id.* § 110765: or to receive in commerce any food that is misbranded or deliver or proffer it for delivery, *id.* § 110770.

78.     By misrepresenting the basic nature and characterizing properties of the Products, Defendants violate these federal and state regulations and mislead Plaintiff and consumers alike.

**D. Reasonable consumers relied on Defendants' misrepresentations to their detriment.**

79.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

80.     Plaintiff and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

81.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

**E. Defendants' wrongful conduct caused Plaintiff's and the Class Members' injuries.**

82.     Defendants know that consumers are willing to pay more for fruit snacks with nonzero amounts of real fruit from the depicted and referenced fruits due to the perception that the snacks are higher quality and a healthier alternative to the competition.

83.     As a result of these unfair and deceptive practices, Defendants have likely collected millions of dollars from the sale of the Products that they would not have otherwise earned. Plaintiff and Class Members paid money for fruit snacks that are not what they purported to be or what they bargained for. They paid a premium for the Products when they could have instead bought other, less expensive products that do not purport to be made with real fruit from the depicted and referenced fruits.

GOOD GUSTAFSON AUMAIS LLP

84.     In making the false and misleading representations described herein, Defendants knew and intended that consumers would pay for, and/or pay a premium for, a product labeled as containing real fruit from the referenced and depicted fruits.

85.     As an immediate, direct, and proximate result of Defendants' false and misleading representations, Defendants injured the Plaintiff and the Class Members in that they:

    a.   Paid a sum of money for Products that were not what Defendants represented;

    b.   Paid a premium price for Products that were not what Defendants represented;

    c.   Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

    d.   Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented;

    e.   Could not be used for the purpose for which they were purchased; and

    f.   Were of a different quality than what Defendants promised.

86.     Had Defendants not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

87.     Plaintiff and the Class Members paid for Products that were purported to contain nonzero amounts of the depicted and referenced fruits but received Products that were devoid of the referenced and depicted fruits.  The products

GOOD GUSTAFSON AUMAIS LLP

Plaintiff and the Class Members received were worth less than the products for which they paid.

88.     Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

89.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendants' misrepresentations. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## CLASS DEFINITIONS AND ALLEGATIONS

90.     Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes:

   a. California Class: All persons who purchased Defendants' Products within the State of California and within the applicable statute of limitations;

   b. Nationwide Class: All persons who purchased Defendants' Products within the United States and within the applicable statute of limitations period (collectively, the "Class," "Classes," and "Class Members").

91.     Excluded from the Classes are Defendants, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to

GOOD GUSTAFSON AUMAIS LLP

whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

92.    The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendants have sold, at a minimum, hundreds of thousands of units of the Products to Class Members.

93.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.    whether Defendants misrepresented material facts concerning the Products on the packaging of every product;

b.    whether Defendants' conduct was unfair and/or deceptive;

c.    whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the Class;

d.    whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

e.    whether Defendants breached implied and express warranties to Plaintiff and the Class; and

f.    whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

94.    Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendants' Products bearing the

GOOD GUSTAFSON AUMAIS LLP

fruit representations and Plaintiff sustained damages from Defendants' wrongful conduct.

95.     Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions.

96.     Plaintiff has no interests which conflict with those of the Classes.

97.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

98.     The prerequisites to maintaining a class action for equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

99.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from

performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

**CAUSES OF ACTION**

**COUNT I**
**Violation of California's Unfair Competition Law ("UCL")**
**Business and Professions Code § 17200 et seq.**
**(On Behalf of the California Class)**

100.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

101.    Plaintiff brings this cause of action pursuant to the UCL on her own behalf and on behalf of all other persons similarly situated.

102.    The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

**A. Unfair Prong**

103.    Under the UCL a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

104.    Defendants' labeling of the Products as being made with real fruit from the depicted and referenced fruits when the Products contain no real fruit from the depicted and referenced fruits, is false, misleading, and deceptive.

GOOD GUSTAFSON AUMAIS LLP

105.    Defendants' false advertising of the Products causes injuries to consumers, who do not receive the promised benefits from the Products in proportion to their reasonable expectations.

106.    Through false, misleading, and deceptive labeling of the Products, Defendants seek to take advantage of consumers' desire for food products containing nonzero amounts of real fruit from the depicted and referenced fruits, while reaping the financial benefits of manufacturing lower quality Products.

107.    When Defendants label and market the Products as being made with real fruit it provides false promises to consumers and stifles competition in the marketplace.

108.    Consumers cannot avoid any of the injuries caused by Defendants' false and misleading advertising of the Products.

109.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under the UCL. The courts "weigh the utility of the defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F. 3d 1152, 1169 (9th Cir. 2012).

110.    Defendants' material misrepresentations and omissions result in financial harm to consumers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of its harm.

111.    Some courts require the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

GOOD GUSTAFSON AUMAIS LLP

112.    As described herein, Defendants' conduct impacts the public health of California citizens and the competitive landscape for Defendants' competitors that act as good faith market participants.

113.    Defendants' labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

114.    Defendants knew or should have known of their unfair conduct.

115.    As alleged in the preceding paragraphs, the material misrepresentations by Defendants detailed above constitute an unfair business practice within the meaning of the UCL.

116.    There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein. Defendants could have marketed the Products without making any false and deceptive statements about the Products' ingredients.

117.    All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

118.    Pursuant to Business & Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of false and deceptive labeling of the Products. Plaintiff and California Class Members additionally request an order awarding Plaintiff and California Class Members restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose

the existence and significance of said misrepresentations in an amount to be determined at trial.

119.   Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff paid an unwarranted premium for the Products.

**B. Fraudulent Prong**

120.   The UCL considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

121.   Defendants' labeling of the Products as being made with real fruit is likely to deceive members of the public into believing that the Products contain real fruit from the depicted and referenced fruits.

122.   Defendants' labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

123.   Defendants knew or should have known of their fraudulent conduct.

124.   As alleged in the preceding paragraphs, the material misrepresentations and omissions by Defendants detailed above constitute a fraudulent business practice in violation of the UCL.

125.   There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products as being made with real fruit.

GOOD GUSTAFSON AUMAIS LLP

126.   All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

127.   Pursuant to Business & Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiff and the California Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

128.   Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiff and the California Class paid an unwarranted premium for the Products. Plaintiff and the California Class would not have purchased the Products if they had known that the Products were actually devoid of the referenced and depicted fruits.

**C. Unlawful Prong**

129.   The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

130.   Defendants' labeling and advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.* (Consumer Legal Remedies Act), California Business and Professions Code Section 17500, *et seq.*

(False Advertising Law), Cal. Heath & Saf. Code § 110765 *et seq.* (the "Sherman Law"), and the common law as described herein.

131.    Defendants' labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

132.    Defendants knew or should have known of their unlawful conduct.

133.    As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unlawful business practice within the meaning of the UCL.

134.    There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein. Defendants could have refrained from misrepresenting the true characteristics of the Products.

135.    All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

136.    Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of false and deceptive labeling of the Products. Likewise, Plaintiff and the California Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

137.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if she had known that Defendants purposely deceived consumers into believing that the Products contained the depicted and referenced fruits.

138.    As a result of the business acts and practices described above, Plaintiff and members of the California Class, pursuant to § 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendants and such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

139.    Pursuant to Civil Code § 3287(a), Plaintiff and the California Class are further entitled to prejudgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Class are entitled to interest in an amount according to proof.

**COUNT II**
**Violation of California's False Advertising Law ("FAL")**
**Business and Professions Code § 17500 et seq.**
**(On Behalf of the California Class)**

140.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

141.    Plaintiff brings this cause of action pursuant to the FAL on her own behalf and on behalf of all other persons similarly situated.

GOOD GUSTAFSON AUMAIS LLP

142.   The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

143.   Defendants knowingly disseminated misleading claims regarding the Products in order to mislead the public about the presence of fruit in the Products.

144.   Defendants controlled the labeling, packaging, production and advertising of the Products. Defendants knew or should have known, through the exercise of reasonable care, that its representations and omissions about the characteristics and ingredients of the Products were untrue, deceptive, and misleading.

145.   Defendants understand that the public values real fruit representations, and this is shown by the numerous statements and fruit images that are prominently featured throughout the Products' packaging.

146.   Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

147.   As a direct and proximate result of Defendants' conduct alleged herein in violation of the FAL, Plaintiff and members of the California Class, pursuant to § 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendants, and requiring Defendants to disclose the true nature of its misrepresentations.

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

148.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendants' false representations. Plaintiff purchased the Products in reliance upon the claims and omissions by Defendants that the Products contain nonzero amounts of the depicted and referenced fruits, as represented by Defendants' labeling. Plaintiff would not have purchased the Products if she had known that the claims and advertising as described herein were false and misleading.

149.    Plaintiff and members of the California Class also request an order requiring Defendants to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interests and attorneys' fees.

**COUNT III**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Business and Professions Code § 1750 et seq.**
**(Injunctive Relief Only)**
**(On Behalf of the California Class)**

150.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

151.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against the Defendants.

152.    At all times relevant hereto, Plaintiff and members of the California Class were "consumer[s]," as defined in Civil Code section 1761(d).

153.    At all times relevant hereto, Defendants each constituted a "person," as defined in Civil Code section 1761(c).

154.    At all times relevant hereto, the Products manufactured, marketed, advertised, and sold by Defendants constituted "goods," as defined in Civil Code section 1761(a).

155.    The purchases of the Products by Plaintiff and members of the California Class were and are "transactions" within the meaning of Civil Code section 1761(e).

156.    Defendants disseminated, or caused to be disseminated, through its packaging, labeling, marketing and advertising misrepresentations that the Products contained nonzero amounts of the referenced and depicted fruits.

157.    Defendants' representations violate the CLRA in at least the following respects:

a.   In violation of Civil Code § 1770(a)(5), Defendants represented that the Products have characteristics, ingredients, uses, benefits, and quantities which they do not have;

b.   In violation of Civil Code § 1770(a)(7), Defendants represented that the Products are of a particular standard, quality, or grade, which they are not; and

c.   In violation of Civil Code § 1770(a)(9), Defendants advertised the Products with an intent not to sell the products as advertised.

158.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff provided notice to Defendants of their alleged violations of the CLRA, demanding that Defendants correct such violations, and providing them with the opportunity to correct its business practices. Notice was sent via certified mail, return receipt requested on April 18, 2022. As of the date of filing this complaint, Defendants have not responded. Accordingly, if after 30 days no satisfactory response to resolve this

GOOD GUSTAFSON AUMAIS LLP

litigation on a class-wide basis has been received, Plaintiff will seek leave to amend this request to seek restitution and actual damages as provided by the CLRA.

159. Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

160. Defendants knew or should have known that their Products did not contain the claimed characteristics because Defendants manufactured, marketed and sold their Products without those characteristics that they claimed. Defendants knew or should have known that their representations about their products as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiff and members of the California Class.

161. Defendants' actions as described herein were done with conscious disregard of Plaintiff's and California Class Members' rights and was wanton and malicious.

162. Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants are still representing that their Products have characteristics which they do not have.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of the National Class)**

163. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

164. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendants.

165. Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, expressly warranted and represented that the Products contain nonzero amounts of the fruit referenced and depicted on the packaging.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

166.   Defendants provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products contains nonzero amounts of the depicted and referenced fruits.

167.   The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

168.   Defendants' express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products, became part of the basis of the bargain between Defendants, Plaintiff, and the Classes, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

169.   The Products do not conform to the express warranty because it does not contain any of the depicted and referenced fruits.

170.   Additionally, prior to the filing of this complaint, Plaintiff timely notified Defendants of these breaches via a letter sent via the U.S. Postal Service.

**COUNT V**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of the National Class)**

171.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

172.   Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

173.   The Products are goods, and Defendants, as the manufacturers, marketers, distributors, and sellers of the Products are merchants under the law.

174.   Defendants developed, manufactured, distributed, marketed, advertised, and sold the Products directly to or for their eventual sale to end users.

175.   Defendants impliedly warranted to Plaintiff and Class Members, prior to their purchase of the Products, that the Products were merchantable and reasonably fit for the purposes for which such products are used and that the Products were acceptable in trade for the product description.

176.   Plaintiff and Class Members relied on statements made on Defendants' packaging and product labels that the Products contained nonzero amounts of the depicted and referenced fruits and were fit for the ordinary purposes for which such Products are used.

177.   Plaintiff and Class Members purchased the Products that were manufactured and sold by Defendants in consumer transactions. The implied warranty of merchantability attached to the sale of these Products.

178.   Defendants' Products do not meet the quality of their description because they do not contain the depicted and referenced fruits.

179.   Defendants' Products are not adequately contained, packaged and labeled because they are packaged as containing nonzero amounts of the depicted and referenced fruits, but instead the Products contain none of the depicted and referenced fruits.

180.   Defendants' Products also do not conform to the promises and affirmations of fact made on their containers, packaging, and labels because they do not contain any of the referenced and depicted fruit as the Products' packaging and labeling warrants.

**GOOD GUSTAFSON AUMAIS LLP**

181. Accordingly, Defendants breached their duty by selling to Plaintiff and Class Members Products that were not of merchantable quality. Therefore, Plaintiff and Class Members did not receive the Products as warranted. The products purchased by Plaintiff and Class Members were worth substantially less than the products Defendants promised and represented. Plaintiff and Class Members relied on Defendants' implied warranties concerning their Products and Plaintiff sustained an ascertainable loss (financial injury) from Defendants' breach of the implied warranty of merchantability.

182. Prior to the filing of this complaint, Defendants were provided written notice of these breached warranties.

183. Defendants did not respond to this written notice.

184. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class Members have suffered actual damages in that they have purchased Products of inferior quality and ingredients compared to how they were represented. Defendants' Products are worth far less than the price Plaintiff and the Class Members paid, and Plaintiff and Class Members would not have purchased the Products at all if they had known of the true quality and ingredients of Defendants' Products.

185. Plaintiff, on behalf of herself and the Class Members, demand judgment against Defendants for compensatory damages for herself and each of the other Class Members, as well as attorneys' fees, interest, costs, and any appropriate injunctive relief.

**COUNT VI**

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Unjust Enrichment**
**(On Behalf of the National Class)**

186.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

187.    By means of Defendants' wrongful conduct alleged herein, Defendants knowingly sold the Products to Plaintiff and Class Members in a manner that was unfair, unconscionable, and oppressive.

188.    Defendants knowingly received and retained wrongful benefits and funds from Plaintiff and the Class Members. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

189.    As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

190.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

191.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, without justification, from selling the Products to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

192.    The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class. Defendants should be compelled to return in a

common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendants.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf the Class Members, seeks judgment and relief against Defendants, as follows:

a)  For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as a representative for the Classes and Plaintiff's counsel to serve as Class Counsel;

b)   For an order enjoining Defendants from continuing to engage in the unlawful conduct set forth herein;

c)  For an order awarding restitution of the monies Defendants wrongfully acquired by their illegal and deceptive conduct;

d)  For an order requiring disgorgement of the monies Defendants wrongfully acquired by their illegal and deceptive conduct;

e)  For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful conduct and illegal conduct;

f)  For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g)  For such other and further relief as the Court deems just and proper.

GOOD GUSTAFSON AUMAIS LLP

### JURY TRIAL DEMAND

Plaintiff demands a jury trial on all causes of action so triable.

Dated: April 22, 2023

**Good Gustafson Aumais LLP**

<u>s/ *J. Ryan Gustafson*</u>
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com


**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Pro hac vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*